First time here her second day, and I hope it's the second day of at least a couple hundred Thank you We'll have our that's our first case for today in repetition of Frescati shipping company LTD at all number 11-25 76 and also United States be Citgo asphalt refining company at all number 11-25 77 mr. Greenbaum yes, sir, and then we have miss Murphy and Mr.. Whalen You're doing this today instead of mr.. Walker is that correct Good morning may it please the court. My name is Jack Greenbaum I represent the appellants for Scotty shipping company and Sakos shipping and trading I would like to reserve three minutes for rebuttal. That's fine I intend to address the issues of a birth owners duty to its business invitees and a charterers Warranty of safe port and safe berths. I understand the Government Council may have something to say about the warranty What is this I mean in the chain here the one that's not here is star tankers What is the status of the arbitration relating to that's been stayed stay pending the outcome of this case? Okay Go ahead okay The first question before the court before any court dealing with a safe approach is what is the approach And that is a question of fact which is unique in each case the district courts error of law in this case was to ignore the facts and to hold that an approach is limited to the immediate vicinity of the so what's the limiting what's the limiting principle you would put on the definition of approach the It's the actual approach or in the words of several of the cases that we cited. It's the waters that a vessel customarily must Transit to get to the birth in the case of a river birth such as one we're concerned with It's the transit from the upper River Channel to the birth. I would just so in your case in this case you wouldn't put Better lean back you would put everything outside the channel into the approach well everything doesn't mean much It's it's the it's 2,000 feet from the channel to cargo's birth and about a thousand feet width of the channel that's You do I understand it correctly am I not analyzing it correctly that the? Approach is a subset of the anchorage It's a section a pathway through the anchorage. Yes, okay, that's great. Okay. I just want to what you're saying that The minute you turn in this case to starboard and the tugs take over that begins the approach that would be my position But I would add that if you want if the court felt there was some other place to start It's I think clear as it can be that when a ship is being pushed sideways by tugs She's on her approach and therefore she's in the approach It's no difference between on and in in this case and the ship was being pushed sideways by tugboats When she struck the anchor, but just coming back to the judge's definition of an approach I wanted to point out that this court is actually distinguished between the immediate vicinity of a birth and the approach in the Nautilus case What the court wrote was a war finger also has a duty to maintain a safe approach However, there's no duty to ensure safe surroundings or warn of hazards merely in the vicinity which what's your? counter to the argument of your opposing colleagues that the Approach can't be anything more than that which Cargo has a permit for dredging because the permit for dredging has nothing to do with anything The permit for dredging is is that just that it's a permit for dredging the fact that the Ship was in a federal project waters does not per se Relieve a birth owner from his common-law duty to inspect and warn its business invitees of hazards And that a federal project waters simply means an area where the government dredges in all other respects Federal anchorage is the same as any other federal Sorry the same as any other navigable waterway which is subject to the federal jurisdiction for various Specified purposes specified in the Code of Federal Regulations, which does not include Searching for hazards and this is true of the pathway from the Channel to the edge of the anchorage as it is from the edge of the anchorage to the birth Why isn't it fair for them to rely upon the government who does have at least some level of control over that area to? search for Any dangers that might exist as a matter of law They had no right to rely because in fact the government has no duty to do as you've suggested And it does not in fact do as you suggested and Cargo in fact knew or should have known of that Apart from the fact the fact it's it's a fact that the government doesn't do it. You know what you're right If the government doesn't do it and it appears that the custom and practice is that no one else does it who is a birth owner Then then why do they necessarily have if the government doesn't have the responsibility Why does the birth donor now have the responsibility? because Cargo Makes use commercial use of this pathway. They know this pathway is the only way to get to the birth They know they're invited vessels are going to come down this pathway. They have a common law, but no, but to what extent do we give? as a factor Custom or practice that it appears that at least I saw nothing in the record that no one Who's a who is a birth owner? Does this it goes out and does a some type of very in-depth Inspection of the approach to its birth. Well, we don't know that from the evidence. There's no evidence that You may be right What we have on the record is there's nothing in there probably that it's probably the case they didn't certainly survey for Depth because you have to survey for depth before you dredge and we know that they Do dredging in the right up to the federal channel in many cases? I've cited in our reply brief and in one case right through federal anchorage number 16 So we know they survey and we know that the federal this was nine, right? This is nine, but we're talking generally about the rights or prohibitions of and the practices of terminals Doing work in a federal anchorage doing certain work in a federal anchorage survey I'm somewhat concerned about our standard of review here. I mean you all debate obviously you claim that this is a question of law as to what constitutes an anchorage that Your opponent approach approach. I'm sorry Your opponents argue that it's a question of fact and yes It seems to me that you're both wrong and that it's a mixed question of law It is and that's I don't imply that it's a question of law What I said was a legal error was for the court to ignore the facts and to delimit his definition of an approach From there on it's a question of fact, which I've said in the briefs in this particular case, though The record is very well developed and I think this court has sufficient information to make a determination that the approach Was this pathway through the anchorage because any kind of a minute? I know that would be submit findings of fact and conclusions of law. Yes, you did. Yes, what happened to them? I Don't understand that. I mean the judge didn't seem to there's a 15 16 page opinion But usually what you see is something. Oh, well, we can't we can't account for what the judge has done What must specifically occur to trigger a duty on cargo to survey a particular area Well, according to Smith against Burnett, but it doesn't need a trigger There the the birth owner is obligated to inspect his birth and the approach to his birth and warn Invited vessels of any hazards If they don't control own The approach or even the birth in some cases the birth being the water next to the dock not not the dock itself Not the pier itself But if if they don't own it Or control it. It doesn't matter. The birth owner is not being asked to do anything that requires control As we've said in the briefs they were perfectly free to inspect and that's all they needed to do to carry out their duty So the test you're proposing is actual approach. Is that the language that you're proposing that we use that or the waters? to adopt the Language and various decisions the waters that a vessel must Customer does customarily travel from the upriver Channel to the birth This is this has got to be a flexible standard because it's a question of fact and it's Could be different from case to case It's certainly going to be different in a harbor than it is in a in a river In a harbor, they the ship might approach from anywhere and maybe there is no usual approach in a harbor Even if we agree with you Do you have a problem with respect to the issue of proximate cause given the judge's finding that even if they had? Exercised care over this area. They would not have found the anchor. Oh, absolutely. That is That was clearly erroneous all of the evidence was to the contrary no evidence whatsoever Suggested they would not have found the anchor Every skit sonar site scan did find the anchor and other objects including one in 2001 That although supposedly the anchor had been there for how many years a minimum of three. There was also an expert Affidavit, but it's stipulated into evidence. That's evidence that many many other ships had gone over that same spot That's right. And we pointed out there were 71 ships that went to Cargo's birth in three years of which I think it was 22 Had to have gone there during high water because that was the pilots requirement for ships of the draft over thirty seven and a half feet another I think it was 31 had dressed between 37 feet and 37 and a half feet and Probably went across the anchorage in high water because the Local, I think it was the Maritime Advisory Committee Recommended that those ships come up the river and the flood tide the incoming tide Which is a seven-hour trip and would have brought them across from Cargo's birth One hour after high tide and that that's high water. So they went across in my water So then there were another 18 ships. We don't know When they crossed and we don't know if they touched the anchor So the anchor could have been touched without causing any damage to ships You're saying that determination would be clearly erroneous is the record Sufficiently developed that that determination could be made on the face of the record and wouldn't turn on credibility Determinations if a different judicial officer had to review the record credibility, you know, because there was no contrary evidence testimony document Their own witness said it would be easy to detect the anchor and you're asking that we make that determination. Yes The draft here was what 36 6 or 36 7, is that right? That's right And Tell us about the the memorandum of November 22 But that what that did and how it helps or doesn't help your case. Well that goes to the misrepresentation claim and it also demonstrates Cargo's casualness with respect to vessels coming to its here Cargo had previously Notified vessels including the Athos that they would be safe coming to the pier at any stage inside with a draft of 38 feet the memo of November 22nd Internally changed that within Cargo to a draft of 36 feet If the ship had known that they would not have come in at the beginning of the flood tide Which was otherwise quite a proper procedure as everybody agrees and that you argue that had you known there was any issue you would have? Been more careful. You would have waited the court made a finding of fact that that statement wasn't credible. Well, no court based its decision on the misrepresentation claim on Ignoring a fact. Well That the area Was not within the anchorage. So it was irrelevant was incorrect because the court simply ignored Cargo's own survey that showed that there were shoals Shallow places right in front of the berth of 36 feet 3 inches to 36 feet 9 inches Which is in some instances? Shallower than the depth of the ship at least at mean low water these Surveys take place at the average low water So and there was plenty of evidence I think it was eight witnesses I mentioned in the brief who said they wouldn't have gone in if they'd known that So they would have stayed out in the channel. They would have either waited until high water And and or Insisted that cargo take off some of the cargo into a barge. It's called lightering. It's done all the time So that the ship's draft would be reduced the this is What I call the the but for Causation causation in fact the only genuine issue about the misrepresentation claim is proximate cause and I recognize that Cross approximate cause is often difficult to answer. It's it's often Sort of a metaphysical debate without a correct answer until the court decides what the correct answer is on the metaphysics Let me ask you something that hopefully isn't metaphysical Are we clear where on the I'm not a Nautical person, but we're on the bottom of the boat The anchorage the anchor hit in if the boat is it was like this It was the very bottom towards the very bottom or was it on the side? Well, it may have been slightly on the side, but it was basically on the very bottom It struck this number seven Center tank the cargo tank and Also, the number seven port ballast tank and the number seven would be basically to the stern of the ship Before you sit down, let me ask you a question that that I think I want to ask everybody and that is if the If we were to agree with you on the contract claim, which you haven't had a chance to get to yet But if we were to agree with you on that, is there any reason to reach the tort claim? The damage is different. No, no The damages are the same the only reason I see to reach the the Negligence claim is because it's a very important issue to the general public Yet that that's what you're focusing on the contract claim You have a contract between star and Carco you have a contract between star and Prescotti the What shows the intent of Carco that their Prescotti be accorded third-party beneficiary privilege Well, I think that the intent is derived from the language of the contract and the context The context in this particular case includes the fact that Carco is the birth owner But the the language is plain enough and I think that the Supreme Court Recognized that in the cremated and the Waterman cases and those are stevedore cases Those are the stevedore cases, but the importance of those cases is that the stevedores? Called into play an unseaworthy condition on the vessel which made the ship owner liable to injured longshoremen and That negligence on the part of the stevedore was considered to be a breach of the warranty that the stevedore owed to the people who Hired them the Charter and the company the Supreme Court Determined that it was manifestly from they didn't Make a long decision out of it, but it was manifestly Evident that the intent was to benefit the vessel and in Waterman The court said if the intent was to benefit the vessel it was also to benefit the vessel owner There's an interesting sidebar. I think the cremating in the district court in that case the trial judge found for the ship owner on a theory that there was a direct implied contract of indemnity between the ship the stevedore and the ship owner obviously the Supreme Court did not find a direct contract, but they did very deliberately in view of the alternative they did very deliberately find there was a Third party beneficiary right in the ship owner and Of course the Paragon case in the Second Circuit is much closer. The Paragon case is in effect. I mean I Won't say it It reads like a dick victim at the end of an opinion We see no reason why you can't apply the stevedore in cases from two years and three years respectively before to this and then you you counter that you have a few years later to the bunch case out of Louisiana where they say wait a minute. That's another stevedore case. Yeah, but you need intent The I don't think the the language in Paragon was dictum It reads like dictum because Paragon had not appealed Paragon had recovered a judgment against YPF Which was its own affiliate right and YPF had recovered a judgment against? Sorry, no, I got recovered a judgment against Republic and Republic had one against YPF There's no reason Paragon should appeal YPF appealed YPF argued that there was collusion between Paragon and Republic for Republic not to submit a defense to Paragon's claim the reasoning the court or YPF raised was that it would hide from YPF the fact that there was a Foreign company involved as well as an American company because they only YPF only waived sovereign immunity for American companies But in fact, there's also the the unstated point that YPF Sorry Republic had no damages of its own. It didn't own the ship Paragon did so YPF can only recover again Republic can only recover against YPF if it had an indemnity claim the court had to Make a ruling on that and the ruling was it didn't matter if there was collusion. It was immaterial because Paragon had a good third-party Beneficiary claim directly against YPF So it was not victim the wording sounds like it but only because of the unfortunate state of the of the proceedings or the procedures that is 62 and I guess whatever is maybe 74 wherever I Couldn't find a whole lot else beyond those two cases the reason for that is because almost all Charter Party cases are arbitrated in New York or London or Lately in Hong Kong as well, but Hong Kong applies English law, and I don't believe it appropriate to cite arbitration decisions to the court of appeals Thank you very much May it please the court and Murphy and I'm here to represent the United States Your honor said I just like to pick up on this notion that if there's a Custom or a practice by all of the terminal owners not to survey into the Anchorage ground That maybe they ought all to be able to rely upon the United States to take care of the Anchorage grounds That's incorrect both legally and factually didn't but the trial judge here said it wasn't the government's fault Isn't that correct? And he said it was whoever dropped that anchor That unknown party that was the that was the person or the entity at fault here wasn't the government's fault That's correct. Yeah, but in in and and it's true that it wasn't the government's fault But that doesn't mean that other entities shouldn't be at fault and be responsible For making sure that the waterways are clear even if it happens to be within an Anchorage ground and if you if my point is if you the government hasn't been found to be at fault and Whatever rights you have as subrogate are going to be attached that they're identical to those of Frescotti Don't you have to wait and see what happens with respect to Frescotti Your honor this argument that we're making in terms of the Anchorage grounds It's not to appeal some ruling by the district court that the United States was liable because as you know There isn't one it's much more to the effect that Pretty much you have a whole industry coming in and saying we're not responsible for taking care of you know Even if our birth comes through even if you have to go through the Anchorage ground to get to a birth And there's a there's a chart on page 1258 of the joint appendix which makes it really clear how close to the birth the Anchorage ground is and the industry is saying We rely on the government to do this and it's just very important that the United States to make sure that everybody know In the industry in addition to having the maritime advisory committees and the survey reports and that that's not part of the government's obligation and What should we derive? Sorry, what should we derive from 12? Well, you can see on page 1258 that that it's a You can see where the vessel is and you can see where the Anchorage ground is and One of the things that Carco says is we don't have a dredging permit We can't dredge into the Anchorage and the truth is and it's an unrobust I believe The Corps will issue the dredging permit for the area that you ask it to dredge I mean, I'm assuming if there was some issue about dredging into the middle of the channel and a busy day or something It would be a problem, but generally it's not the government that says what you can dredge You submit your permit and you ask for it it happens that this is an unusual terminal because it's so close to the Anchorage ground and because as the Testimony said the vessels have to come through the Anchorage to get to the dock But that doesn't mean that Carco has any problem getting a dredging permit if it asked for a dredging permit For a survey you don't have to have a permit of any sort you can go and survey I mean the Corps you know often wants to know where you are so that it knows where the vessels are but That there's nothing in the Corps regulations or the permitting process or anything of that sort that would prevent Carco from doing that and I think one of the the images they're using is it's like you know as if the federal Anchorage ground were like a federal post office or a piece of federal property or a Parking lot and it's really not like that at all There's some regular territory authority to dredge and survey, but basically it's a navigational thing whether this is an area where you can You know you know if you need to anchor as you're going up and down the river. This is where you would have navigational priority to anchor You're really just making a policy argument to us and almost akin to what you would do if you were an amicus in this proceeding Well now on the contract claims we're a party on the contract claims, but I think I think yes, that's right No, we do have the issue about the breach of the settlement agreement I'm having a hard time following that you say they breached the settlement agreement because they agreed not to bring claims against the government but how would that bar them from asserting a defense based on the negligence of the government as Against a claim by Friscati that doesn't I'm having a hard time following the logic Understand that and you're on it that would be completely correct if what they had said was we don't have a duty the government has a duty, but the way it came up in the district court was as a Supposed defense to the contract claims and so the request was that the government forgo its contract Damages because of its quote-unquote exclusive control of the anchorage grounds So and that's really a negligence theory, that's that's you know, you control the anchorage grounds there was an accident Therefore you forgo your contract damages and the settlement agreement which is at page 95 of the Joint Dependents Clearly says that they are not going to argue that the government was negligent and that that should reduce the contract damages I mean it specifically says they're not going to ask the court to offset or reduce damages because of alleged negligence But I Agree with you the much more important point at this point, especially given the amicus filings is to make clear that the government does not maintain or have exclusive control over anchorage jams in a sense that would Prevent Karko any other terminal owner or any other river user from getting a permit to dredge from surveying So are you asking us to actually make a Finding that that if the government had been sued on the negligence claims that the government wouldn't be liable Yeah, I'm not asking to engage in a lot of dicta but I think to the extent that Karko's negligence claims turn on the notion that We can't possibly have a duty because it took place in an anchorage ground I'm just here to answer any questions you have about the law that relates to that the fact that relates to that I'm not asking for any specific ruling But it was important even though there's no ruling against the government that the United States be heard on this point I think to answer the questions and to explain how the river is regulated Because otherwise, you know based on you know, otherwise we'd be here and nobody would hear be here to explain the United States position I Just asked one question about 1258 The the the What are these squiggly lines for? I think that was where the survey was and the approach is a Part of that or a subset of of that. Well, if you see the channels up here on the top left Yes, I still had to be swung around And Into lie against the dark Okay, so so that whole area from the channel down to where right? I mean the other thing that's getting lost in the weeds here is that it's not very big Specifically compared to the size of the vessel. I mean if the vessel had her stern up Against the dock and her nose pointing up into the anchorage about half of her would be the in the anchorage ground So even though you know It looks as though things are in the middle of the anchorage and the actual areas in terms of the size of the vessel are quite small So I see my turn so if your honors wanted to hear anything on the contract claims also well, I just have one other question and if it's outside the scope of your expertise, you'll tell me but The the does the approach technically change From For each vessel that comes into the anchorage and then comes up to the berth or is the approach always a? pretty static area of the anchorage I Suspect that it depend it may depend somewhat on tides and those kind of things But there's going to be like an area that is generally traversed by the ships going from the channel to the dock. Thank you Good Morning I'm Richard Whalen from Palmer visa Ben Henderson And I'm arguing on behalf of the Apple ease in this case, which are collectively referred to as Carco in the briefs What is the appropriate scope of the approach? How would you define approach your honor? The approach is defined and judge Fulham found by the geographic scope of The birth area the immediate birth area within for example in this case the red triangle He talks about the area immediately adjacent that seems awfully small when a ship has to turn in the channel to in this case starboard tugs come on and comes Approaches the birth shouldn't it be from as the amicus brief of the BIMCO international says that an approach should be means the pathway from the point at which It left the Athos one left the Delaware River Channel until it reached the Carco birth No, your honor the approach is set in law It's a settled legal standard set forth in the Nautilus case the Western Bulk case We are not as cases from us in 96, right? That's correct You're on it has a definition of approach in there in all of these cases and even in the plaintiffs cases They're taking they're trying to expand the definition of approach all of these cases That take the plaintiffs cases that they cited these ships were like Smith versus Barnett, which let's look at this case Did Our court give a definition of the word approach yes Well, it's not it can be implied from the opinion that the birth owner is only responsible for the Immediate birth area and in all of these cases the approach is that's what we said in Nautilus The immediate entrance to an exit from the physical dock structure And that's why judge Fulham found in accordance with Western Bulk that the approach is limited to Sitka's triangle Which is the permitted area? What judge Fulham said is the reason he was making that finding is that that you didn't have exclusive control over the anchorage That's another factor your honor only test that he seemed to apply and then he turned around and applying that test Said immediate vicinity of the birth and he didn't say I'm gleaning this from other cases well, he did cite favorably in in his decision the Western Bulk case in his definition of What of the area that Carco was responsible for? It had no he said it had no duty with respect to federal anchorage number nine Because those public waters constituted surrounding areas or areas over which Carco exercised no control So you believe the legal definition of anchorage should be the immediate vicinity of the birth of Approach and that's the language of all of the cases in the immediate vicinity of the approach not surrounding areas not waters in the vicinity and you'll see in Nautilus and all the other cases Western Bulk and Osprey the Specifically say you do not guarantee I'm asking this is because you argue in your brief that that what the judge made was a finding of fact and that we should Not review it de novo and yet now you're telling me it was a legal conclusion that that we should adopt it's both because the what the there is a legal standard that the judge followed and the facts established that Carco only exercised maintenance and control and dredging within the triangular area that's that was adjacent to their physical doc structure if it's a fact issue that means that It would be improper for him to Judge Fulham to have Disregarded all of the testimony on approach that Seems to be at odds with what you've said, right? I mean It appears that through throughout The record the definition of approach seems to be more broadly Discussed and you've just said I mean you you're basically saying it's the area right right outside of the birth The problem your honors is the word approach Can be used in a vessel approaching a dock. It could be it could be 60 miles away approaching a dock It's it's used very loosely in the decisions. You have to focus on the geographic scope of the legal duty, which is Where the birth owner had maintenance and control and in this particular case that area was the red triangle for which Isn't that a bit circular I mean because the approach Defines the legal duty at least as it relates to negligence And so when you say we have to look at legal duty You're telling us to look at a different legal duty to then define this this duty of care The duty of care is limited by geographical scope to the area of the birth that Carco controlled and maintained which is that red triangle shown in the exhibits and The approach has to be within that area all of the cases say that it's the immediate entrance to an exit How can we focus on the on the cases in the first instance when you know as judge O'Malley? Just said and you seem to agree Initially it's a question of fact the the testimony of the witnesses we can go through them this is on page 269 of the Appendix we normally think of an approach to a birth as that area after you know when you've hooked connected the tugboats You've received the docking tugs and you're starting to maneuver the ship to the birth And that's what we consider the approaches now. Is that what you're talking about? No, your honor the the if you use that definition and then this is the whole point that for Scottie's trying to take this approach and expand it into public waters and In this case the tugs actually came alongside the Athos one and the docking pilot boarded in Billingsport range Which was a mile away so this This this would result in exactly what judge Fulham said the approach would necessarily Mean all of the entire passage that the vessel would have to make out to the Delaware River from the Delaware River How far is it from the birth to the channel? Excuse me? I said how far is it from the birth to the channel? You have to go through the federal anchorage first It's about it's about 900 feet Slightly more than 900 feet. I would say All right The definition as it seems to have been framed and what I just read would take us from You know at some point at the channel around the channel edge Through the anchorage to the birth and you're saying that's too broad a definition of approach. Yes, your honor It's and then this feeds into again the policy issues. Where does it? Where does where does this end if you expand the legal duty of a birth? owner Terminal operator outside the immediate birth area, which is what the case law presently holds Then you you open up a whole List of policy issues. It expands a terminal liability to all vessels The public the anchorage here federal anchorage number nine is a public anchorage 673 vessels from 2000 to 2004 anchored in federal anchorage, I think if I We had agreed at the outset with your opposing counsel that it's we have a mixed question of fact in law Law would be the definition of what is an approach? Is that correct? The law the law would be the term the the what is the operators duty? With respect to reasonable care. What is an approach? I ask you what is an approach? Is that a question of law or fact? I think it's a question of fact the approach itself based upon testimony the definition of an approach The definition of an approach is a question has to be of law, right? It has to be yes, and When you look at the Nautilus case, it says when I'm looking at what you are supposedly gleaning from You talk you talk about duty extends to a ship's right to enter use and exit a war fingers dock Facilities not being exposed to dangers that cannot be avoided by reasonably prudent navigation and seamanship. So entering means somehow you've got to get there from where you are in the river and then you look at a sonnet marine, which was a District Court case from New Jersey in 85 affirmed by us in 86 the approach extends only to the birth and to the approach to the birth and not to adjacent areas, whatever that means and Then another case from the Fifth Circuit. It does not extend to hazards merely in the vicinity So it may mean if something outside the approach That's what it would seem to me Western bulk carriers Which you just cited found no negligence where the the ship grounded on a shoal several hundred feet west of the port Which was an area well beyond what reasonably could be deemed to be an approach So I don't see how Western bulk really helps you. Well, it seems to me that it comes back to The the the amicus brief where counsel says on page 21 the most logical place for the start point of the approach to the cargo berth is the point at which Vessels leave the channel and begin maneuvering towards the berth It is at that point where the risk particular to the port transition to the risk particular to the berth What's wrong with that? What's wrong with that? Your honor is the federal Anchorage number nine is part of the same Federal Delaware River project as the channel. It's no different. It's a public waterway It has to be dredged and can and maintained by the Army Corps of Engineers to 41 feet It's there's 673 vessels in the four years before this accident Anchored in that anchorage many of which didn't come to Carco Just in 2004 for this incident 141 vessels used that public anchorage So that public anchorage federal anchorage number nine were vessels that don't even come to Carco's berth anchor Cannot be considered An approach it's actually part of the navigable Delaware River project and it's only the area inside of that anchorage boundary that Carco would be responsible Position okay Your position is that because other ships can also use the anchorage that it by definition Can't be part of the approach for for a particular ship. That's approaching your birth That's correct. Your honor the these are this is a public waterway That's maintained by the Army Corps of Engineers a federal anchorage part of the Delaware River project It's not part of our birth and therefore it cannot be an approach to the cases that you cite It's clear that control would seem to be a sufficient condition for defining the area that of responsibility But but I don't see anything in the cases that say it's a necessary condition to define the the area of responsibility And yet that's what you want us to say. No, I think the cases do rely on the area that is maintained and controlled the actual birth area and For example in Western Bulk that the same argument was made you have the birth area that was maintained and in the control of that port And then when the vessel left and necessarily the vessel had to go through this federal project in Western Bulk to get Down the river to get to the Pacific Ocean. They had to go through this You can't argue that were court rejected the argument that that would be an approach. Yeah, but in Western Bulk Discussed three cases that considered Defining approach but ultimately concluded that since the ship grounded in the shipping channel It was quote in an area well beyond what could reasonably be deemed to be an approach To any of the port and it's a port of Stockton's births That seems to be at odds with what you're telling us I believe it's the same thing that was several hundred feet from their birth area and it was not considered an approach It's no different than from the to the adjacent anchorage It was part of the federal project just like the channel in Western Bulk The approach can is the approach cannot be considered to be the area outside the immediate birth area Let me let me shift gears with you on the negligent misrepresentation claim Is it possible that a master would become more cautious in the anchorage upon learning that the draft of the birth that he was Nearing had just been decreased by two feet Those from 38 to 36 and you know, the draft of this boat is 36 6 or 36 7 your honor The easy answer to that question is as judge Fulham found as a matter of fact That and he rejected this post-incident speculation based upon the credibility of the witnesses that he heard testify in this case The chief of the master and the second officer transited the Delaware River Erroneously believing they were transiting at a high tide when they are actually transiting at dead low tide and The fact that those two that the the master and the chief officer are at the second officer Ignored publicly available title information crucial to safety 840 on the 26th Didn't you give the okay it was it was all right to come in No, your honor the the in the morning when when Carco as judge Fuller met found as a matter of fact made no decisions with respect to navigation all of those decisions were made by the navigators aboard that vessel and No, your honor the birth was clear at that point At a point before that the the birth was clear all the Carco as a terminal operator does they make no Navigational decisions as they say our birth is clear but it's up to the master and The pilot to make all of the decisions on whether a safe transit can be made based upon They're the experts in this area based upon the navigational information Available to them one of which is title information and they in making their decision in a 40 It was it was what low tide coming and progressing toward high tide. All that we know is that at 12 20 when they left and they decided to go it was an absolute They followed the dead low tide all the way up the river and if navigators are ignoring what that kind of I'm asking at 840 p.m What was what was the tide at that point? It was still it was just to be it was just the beginning of coming up from from low and How much difference is there between high and low tide? It's almost six feet in the Delaware River and in federal anchor to number nine. And so if the chief officer a second officer in the master would not even Respond to publicly available title information judge Fulham found properly that they certainly wouldn't have responded you were if you were a master and you thought that the Tide The draft clearance was 38 feet not knowing that it had just been reduced by two feet four days earlier 36 feet and you knew that your hall had a draft of 36 6 or 36 7 But your honor I think you have to look First of all that there's three elements to this claim. There has to be a misrepresentation There has to be causation there has to be reliance Well in this particular situation you have to look at the particular language set forth in that port manual that they're relying on it's it's an indication of And and you have to look at the wording it says 38 maximum draft at the birth At the time of the revising of this document It may change from time to time and it should be verified before arrival But none of the why wasn't that information given out to those who might like masters because there's been a change and You make the call if you want, but here's what it is We've decreased the draft because of shoaling from 38 to 36 Well, in fact, there was no change because an exception was made Well, there was a memorandum on the 22nd of November was there not? Yes, there was your honor and it was that's a and as that the maximum draft at the birth was being reduced from 38 feet To 36 feet, but as judge Fulham found as a matter of fact, that was an internal policy By Carco that had to do with shoaling outside of the area that was that the vessel would sit Well, that's because he defined the approach so narrowly and well in this particular case this this didn't deal with approach this Policy has to do in this with when the ship is actually secured to the birth and that Exception by mr. Rankin was done it with full notice at 10 days before a vessel called the new river Had come in to Carco with a draft of 36 11 went through an entire entire title set cycle while being loaded and left at 373 these are dressed deeper than the Athos Juan and it's was safely there. There was plenty of water also may have been different I mean Well, you're on why wouldn't just in terms of how we analyze this? Why wouldn't we go and take a look at the hand formula in the Carroll towing case from 47, which says that? You'd look at three three variables probability of harm the gravity the resulting injury and the burden of adequate precautions the probability of harm We don't know because I mean I'll leave it's unclear because a lot of other boats had gone through perhaps at other Variations of the tide the gravity of the resulting injury. Well, that was significant injury It was a significant oil spill and damage to the hull and the burden of adequate precautions and that's really what I'm focusing on here because if you knew that there was a problem four days before and Basically this boat on the 26 as I understand it from the record is the last one of the season to go through One might make an argument that you just sort of say, okay, let's just let's just get through this and we'll worry about it next season and you knew that there was a difference of two feet and Yet nobody else was told of that your honor. First of all, it's not death. It's maximum draft You cannot tell anything about navigational safety from maximum draft The maximum draft goes from the waterline to the bottom of the keel It's up to the vessel navigators to know the depth of water So this has not as judge Fulham found this did not affect the depth that was available in the anchorage which was safe was the master looking at charts that showed a draft of 38 feet the draft the master was looking at a navigation chart that had depths as low as 34 feet 35 feet in this general region Known of the of the recent discovery of the shoaling No, the master should have prepared a port-to-port passage plan where it takes into account depth from from birth to birth and that's the requirement of the federal regulations and he has to know that Now safety information for navigation and depth is crucial and this particular document did not mention anything about depth It was draft and in any event the exception was granted also This had nothing to do with the incident this is If a draft is from the waterline to the bottom of the hull and it's 36 6 or 36 7 and The memo on the 22nd talks about because of shoaling the draft, isn't it? Correct? The draft is being reduced from 38 to 36 Yes, but that's the draft of a vessel from the waterline To the The keel of the vessel. It's not water depth. There's under keel clearance beneath that so it's not a representation as to depth within the Anchorage, I mean within the birth and in any event What do you think the master would have done had he known the information on the 26th that you knew in the 22nd? The master would not have done anything and this is based upon The evidence of trial he would not have relied on it because first of all, it's not depth information it can't be relied on for safety of navigation and Secondly, he disregarded the most important information about tides. So who would believe that he would even consider? draft information That really can't give him any help in preparing a safe birth to birth passage point and more importantly on this net on this issue the Incident occurred In similar to the comments in the Nautilus case Outside the birth area and as Nautilus found that things that happened within the birth area can have cannot be a cause or approximate cause in fact of something that happened outside the birth area and In this particular and though these are factually state stated the court stated that those are factual findings in this case Judge Fulham made a specific factual finding that this incident happened outside The birth area and that there was no cause and facts or proximate cause and that should be given Deference under the Nautilus decision Yeah, sure I want to turn you to the warranty before you sit down with respect to the contract claim As it relates to the to the warranty Do you concede that the concept of port is broader than the concept of birth combined with approach? In terms of the the warranties yes, well There's it's a safe port save birth warranty the port safe port warranty would apply to the port of Poulsboro that would include The area in and around Poulsboro the birth again would be when and the cases show is when the ship is actually alongside, okay, so putting aside what the the nature of the guarantee is or nature of the warranty is and whether the Fifth Circuit or the Second Circuit approach is more appropriate and putting aside whether Parko is negligent. Would you agree that in this case the port would encompass the Anchorage? Yes Okay, so so then the question becomes if it does encompass that area that this whole geographic Analysis as to approach is not really relevant to the to the question of the warranty, correct? The approach argument is limited to the warfinger negligence Cause of action and in this case, we don't even get to any of these contractual warranties because there's no privity of contract and For Scotty had their own Separate contract with star that had its own safe births We think that that they are a beneficiary of this Warranty then the question really becomes if that's the case if we ever get there Then is it a negligent standard or is it something stricter? right if the what if if you Assume that there's a third-party beneficiary status, which there should not be just assume that right then you never there still can be no liability because The port was found safe as a matter of fact based on historical safe usage 673 vessels in four years 141 in the year before the accident and in any event even if you get past that and that's a finding of fact and Conclusion of law on on the part of judge Fulham, even if you get past that there's the name port exception This master knew he was coming to Paul's borough he had been here before chocolates had been here for 14 times before to this terminal and They're in the best position under the name port doctrine as navigators a safety finding I mean it was yes that the judge said the port was safe There were not very many specific findings as to why he was saying that but but he did say in a half page that the port was safe It it's difficult to determine whether or not he was measuring that By some definition of porch that was more narrow than what you've just agreed to Is it clear that when he was defining the port to be safe He was defining the port as broadly as you just have well He could because his findings on on the safety of the port were based upon the safe anchoring of vessels 673 during the four years before the incident and That those are the factual that those are the facts and the evidence that the that the judge considered in addition to No prior incidents within Carco's birth that had anything to do with adopt the second search circuit approach rather than the Fifth Circuit approach Does that objective? finding of safety Still prevent a finding in favor for Scotty. Yes, it does Explain that Because it's a the port is considered to be safe as a matter of fact and a matter of law based on prior usage Okay, so that what you're saying is that strict liability doesn't mean strict liability against any possible accident It means strict liability to the extent that the ports not safe under some objective measure That's correct. And also if there's not strict liability even under the Second Circuit Rule because negligent navigation would be a complete defense To a safe port safe birth warranty under the Second Circuit rule And that's the reason why the Arduino case is a better standard because it recognizes the policy problem with having a strict warranty the the better approach because it because that a strict warranty would Discourage or have navigators rely on the warranty and they're the ones on the scene and they're the ones best suited to assess the Port and birth and to make quick decision on scene decisions If I understand contract law if I invite you to my house and I give you a warranty that you will be safe That's That's something beyond Just mere negligence for me not taking care of something I'm saying to you I'm telling you you come You'll be safe And if you take this particular approach Well this in this area law in the Charter Party area of the law It's not an absolute warranty even the strictest standard which would be the Second Circuit approach that negligent navigation Is a complete defense if it's causative to that Warranty and then there isn't any warranty at all under Arduino it's due diligence standard and in any event in the name port doctrine extinguishes the warranty that is the effect of that doctrine But we don't have to get to any of this By on the contractual level if we did if we determine Different from you what an approach is and that you had a responsibility For example to let people know of the November 22 memorandum if indeed that's negligence Well, well your honor. I think in both in those instances taking the first part there was no misrepresentation And none of us can but I'm saying we don't have to get if we determined that there was no intent to have a warranty given by Carco to Frescotti Because Carco had given it to star tankers so star tankers could make the claim but not necessarily for Scotty if you don't believe in the third party beneficiary Intent here, then you don't get to any of these issues. We were just talking about That's that's correct Okay Anything further? Thank you I Was first I would like to respond to judge Greenaway's two questions the first was Whether the approach changes for each vessel the answer basically is no Every vessel that comes into Cargo's birth on the flood tide is Required to take exactly the same path and that was Cargo's testimony As well as the testimony of all of the net nautical witnesses including the pilots That's 90% of the ships that go to Cargo That's my understanding the other 10% of ships are also pushed in Sideways by tugs the only difference is they don't have to turn around Therefore I don't know whether they might start their approach a little bit more downriver a little more more southerly then Ships that turn around do but if that's so first of all it only add a little bit of width to the to the area That has to be inspected and secondly whether we know where they Normally navigate or not I think that birth owner has a duty to the 90% of its ships that come in on precisely the same path There is no other path now your second question judge Greenaway is how far was the channel from the birth and the answer is it was? 2,000 feet now to put that in perspective Cargo's birth is a thousand feet long the birth is the water next to the jetty or the pier It's not the pier itself It was a thousand feet long because it was designed to accommodate shifts up to a thousand feet So a distance of 2,000 feet or less certainly is not disproportionately far from a 1,000 foot parking space Let me turn you to the issue of the finding that judge Fuller made that that the port was objectively safe and Admittedly, it wasn't the longest most detailed finding But it was it was very firm said based on all the evidence I find as a matter of law that the port was safe doesn't that Create problems for you with with respect to both causes of action Now he he the judge found the port was safe in two respects one. He said it's generally safe I don't know what the heck that means. I mean if it was safe two miles up This is a 2.2 mile long anchorage. It was safe two miles away, and it's nothing to do with our case The second finding is that the port was safe for a vessel that had a draft at 36 foot 7 inches Going to cargo and what he didn't say is But it must be implied is at the beginning of the flood tide all the witnesses first of all agreed even experts Agreed that a draft of 36 feet 7 inches is proper and they all agreed It's proper to approach at the beginning of the flood tide including captain Rankin is the port captain for cargo but the judge never made a finding about the the Athos is a draft If the Athos is draft was in fact 36 feet 7 inches And if it was in fact proper to approach the berth at the beginning of the flood tide and if the ship struck the anchor the berth was ipso facto unsafe because Your theory is that it's an absolute guarantee against any accidents I won't use the word absolute because it doesn't apply first of all to the captain's negligence if they are supervening or contributing negligence then the damages can be either divided or disallowed altogether it also is not a guarantee against what the textbooks and cases call abnormal events and about Abnormal event isn't the mere fact that this ship alone hit the anchor There's something one witness said this was an accident waiting to happen An abnormal event is a weather event an earthquake in a place where there aren't earthquakes a riptide in a place where there aren't riptides Oh an unexpected war this is an English case and unexpected hostilities between Iran and Iraq That prevented a ship from leaving the port of Basra things like that what what is the In discussions with mr. Whalen we talked about the difference between depth and draft Can you talk about that yes, I was I was going to respond to counsel's comments about that first of all It doesn't make sense to say that telling us the safe allowable draft for a ship doesn't tell you anything about depth Of course it does it means the depth is deeper than safe allowable draft and in fact Carco had a policy of requiring at least one foot of Undocu clearance clearance between the bottom of the ship and the riverbed at its birth One foot so that means the depth that his birth had to have been at least 39 feet in terms of what it was representing to the ship If I'm responding to things that they said on on facts facts which have to go back on remand But I can't help but say these things First of all there was this there was no there were no areas where the depth was 34 to 35 feet I don't know where that comes from Shallowest depth in the general area On the charts is 38 feet and the master and the docking pilot both testified the master asked the docking pilot about that And the docking he asked about it because the project depth was 40 feet and the docking pilot said we're not going to go anywhere Near that don't worry about it So the master was very careful Sorry, I can't read my hand right that's okay. Oh join the class this nonsense about the about the instructions or the port manual saying please check to see if the If the safe draft had changed well first of all that the ship got these instructions two days before it went in Nobody's gonna check on that and secondly. It's deficient as a matter of law because there as we've discussed at length a birth owner has an affirmative obligation to warn about risks about hazards And finally on this point of facts that the court made no rulings about draft Depth seamanship or any of that sort of thing this is all for remand So much time was spent on it earlier when I asked you that question you said we could review the record and make all these You didn't say it but No, not about that subject I made that clear in the briefs now the subject I was talking about was the What was the approach to cargos terminal? Now the question that you asked and I was diverted on was Now I'm sorry, I did respond to it right judge Greenaway your other question I Hadn't actually completed answering About the the distance of a thousand feet and maybe that there's a 2,000 feet and maybe that doesn't bother the panel So forgive me if I'm this is overkill, but the nautical witnesses testified on this subject in fact They testified kind of spontaneously in their own words. They weren't being asked about is this a big distance, but captain Bolton The owners expert nautical witness Talked about the place where the ship turned out of the channel, and he said and I guess I really should quote it He said It was within 2,000 feet of the terminal comma immediate vicinity of the terminal That was what I would call a spontaneous explanation. We weren't trying to promote a definition of approach And that you'll find it 293 of the joint appendix and then the manager of the docking pilots Association captain Quillen was talking about building support range Which is where the docking pilot? took the con and then took the ship a few short distance further into the Mifflin range before he started his turn anyway the docking the manager of the docking pilot Association said That's the range. That's right there by Sitka That was it I can't read my writing to their 87 or 871 of the joint appendix Now on this question that council raised about public waters by definition every approach is a navigable water and every navigable water is subject to the federal jurisdiction And therefore is a public waterway, but obviously the law is that every such navigable water should be inspected by the birth owner If that navigable water is in an approach Thank thank you very much. It's really. Thank you to all counsel for well presented arguments and Also, very well done briefs We'd like to ask counsel to have a transcript prepared of this Oral argument and to have the cots with costs that evenly between Prescotti and Carco But not have the government participate in that payment Thank you very much I think the matter under advisement called the next case